FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2004 FEB 17 PM 2:24
LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

04-0451

| | | |
|---|---|---|
| **RODNEY QUATROY, BETTY QUATROY AND VINCENT ANGELLO QUATROY** Plaintiffs | * | |
| **versus** | * | **CIVIL ACTION NO.** ________ |
| | * | **SECTION** ______ |
| **THE JEFFERSON PARISH SHERIFF'S OFFICE,** | * | **MAGISTRATE NO.** SECT. E MAG. 4 |
| **and** | * | |
| **HARRY LEE, Sheriff of Jefferson Parish** | * | |
| **and** | * | |
| **THE JEFFERSON PARISH CORRECTIONAL CENTER (JPCC),** | * | |
| **and** | * | |
| **JPCC OFFICERS NO. 1, 2, 3 4 & 5** | * | |
| **and** | * | |
| **JPCC EMPLOYEES NO. 1, 2, 3 4 & 5** | * | |
| **and** | * | |
| **JEFFERSON PARISH COUNCIL** Defendants | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

COME NOW Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy, who, through undersigned counsel, Michael S. Fawer, and Herbert V. Larson, Jr. represent that:

Fee 150.00
✓ Process
X Dktd
CtRmDep
Doc. No. 1

## Introduction

1. This is both an action on behalf of wrongful death beneficiaries and a survival action, brought pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution, and under the laws of the State of Louisiana, against Harry Lee, Sheriff of the Parish of Jefferson, and against the following L.L.C. and persons in their individual capacities, who at all times germane to this complaint were employees and or acting under the direction of Sheriff Harry Lee: Jefferson Parish Correctional Center L.L.C. (JPCC), Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, JPCC Lieutenant Michael Borne, Medical Assistant Simone R. Hinton, Medical Assistant Latonya Curly, Deputy Eartha Powell, and Deputies 1 & 2 who are known but not yet identified. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and upon the pendant jurisdiction of this Court to entertain claims arising under state law.

2. It is alleged that the individual employees and the JPCC acted with *deliberate indifference* to prisoner Quatroy's serious illnesses and or injuries, violating his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment and the wanton infliction of pain and that these defendants failed to provide Mr. Vincent Quatroy with the medical attention necessary to save his life. It is further alleged that each of the acts alleged in this complaint occurred under color and pretense of the statutes, ordinance and usages of the State of Louisiana, the Parish of Jefferson, and the municipality of Gretna, Louisiana, and under the authority of their position as employees of Harry Lee, the Sheriff of Jefferson Parish, and or the JPCC.

3. It is alleged that municipal policies and or customs were adopted and or maintained by Sheriff Harry Lee and the JPCC with *deliberate indifference* to an inmate's constitutional rights.

It is further alleged that these municipal policies' general conditions, practices, rules and or restrictions caused the deprivations of Quatroy's rights under the Eighth Amendment to the United States Constitution.

**Parties**

4. Plaintiff Rodney Quatroy is a person of the age of majority, a citizen of the United States, is domiciled in the Eastern District of Louisiana and is the father of Vincent Quatroy, deceased.

5. Plaintiff Betty Quatroy is a person of the age of majority, a citizen of the United States, is domiciled in the Eastern District of Louisiana and is the mother of Vincent Quatroy, deceased.

6. Plaintiff Vincent Angello Quatroy is, and was at all times germane to this complaint, a person of the age of majority, a citizen of the United States, is domiciled in the Eastern District of Louisiana, and is the son of Vincent Quatroy, deceased.

7. Defendant Harry Lee is the Sheriff of Jefferson Parish, State of Louisiana and resides in the Eastern District of Louisiana.

8. Defendants Medical Assistant Simone R. Hinton, Medical Assistant Latonya Curly, Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, and Deputies A & B are all employed by the JPCC in the Eastern District of Louisiana.

**Facts**

9. On February 4, 2003, Vincent Quatroy, now deceased, was remanded to the JPCC in good physical condition.

10. Between roughly 5:30 p.m. on February 4, 2003 and 11:55 a.m. on February 16, 2003, JPCC Central Control was kept apprised of all or most of the defendant officers' and medical assistants' observations, though not including all of Quatroy's episodes/ incidents/ and or events, relating to Quatroy's medical condition and general state of well-being. The defendant officers' and medical assistants' observations include, but are not limited to, observing Quatroy: having 5 separate seizures, refusing meals, defecating on himself and his cell, vomiting blood and sleeping and remaining on the floor of his cell for extended periods of time. At all relevant times, the JPCC was aware of Quatroy's deteriorating condition.

11. Vincent Quatroy died in less than twelve (12) full days of JPCC custody.

12. He was booked at the Jefferson Parish Correctional Center and the intake form was completed in late afternoon on February 4, 2003. The JPCC Intake Booking Division Health and Screening Form listed the following visual observations of Quatroy: he did not appear under the influence of drugs or alcohol, he did not have any needle marks, there were no visible signs of withdrawal, he did not appear despondent or depressed, and he was carrying medications.

13. At the time he was first incarcerated, Quatroy was almost 50 years old and weighed over 200 pounds. The health intake form reflects that Quatroy informed the JPCC he was currently taking legal medications, specifically Methadone and Xanax.

14. Vincent Quatroy had been, up until his incarceration, a patient at the New Orleans Narcotic Treatment Clinic (NONTC), located at 7606 West Bank Expressway, Marrero, Louisiana 70072. NONTC is a federally accredited clinic. He received and ingested Methadone,

as treatment for pain, in front of staff on a daily basis, except Sundays, for approximately 15 years. He was also a patient of Dr. Ragenstein, a liver specialist at Tulane Medical Center. In total, Quatroy was on 10 different medications, including but not limited to fluid pills for his liver, Xanax and Paxil for his nerves, and methadone for severe chronic pain. Quatroy had ruptured disks in his back, and had metal rods placed in one leg and in his foot and walked with a cane.

15. Bridgett Edmonds, who lived with Quatroy for approximately 10 years, brought the 10 bottles of medication to the JPCC, where they remained. Ms. Edmonds spoke with Warden Jambon and medical staff, in a three-way phone conversation, regarding Quatroy's various medical conditions and medications and was told he would be moved to medical.

16. On February 5, 2003, at 10:45 p.m. (over 24 hours after his booking process began) Quatroy complained of heart trouble. Nurse Gustavia Smith checked him and gave him liquid antacid.

17. On the morning of February 6, 2003, at 7:40 a.m. Quatroy was feeling worse and requested to be seen by Medical. Deputy August was notified of this request and he relayed it to Central Control. Instead, at 10:00 a.m. Quatroy was seen by M.A. Tamyra Dyer during Med Pass. A little over six hours later Quatroy requested the medication that he was expecting to receive. Quatroy refused his food that day and at roughly 10:00 p.m., over 48 hours after his booking process began, Daniels informed Central Control that Quatroy was throwing up and felt sick.

18. Quatroy was taken to Medical for the first time on February 7, 2003, at roughly 10:00 a.m.. A medical screening of Quatroy was performed. Quatroy informed examiners of his use of Methadone, his use of Xanax, that he had Hepatitis C, stomach problems, and that he had a

hernia operation in 1973. Dr. Gbadetole Williams, a doctor at the JPCC who generally worked Monday through Friday from 9-5, also saw Quatroy. Dr. Williams filled out a form during his examination of Quatroy; both Dr. Williams and Quatroy signed it. This form included: Dr. Williams' observation of needle track marks on Quatroy's arms and extremities, and Quatroy's statement that he took Methadone and Xanax, that he was allergic to Demerol, and that he had Hepatitis C.

19. Dr. Williams found that the only abnormality in Quatroy's physical condition present during his February 7, 2003 medical examination, were what he believed to be the "illegal track marks on his two arms." Dr. Williams assumed that these marks were due to past intravenous drug abuse.

20. Quatroy saw medical assistants during Med Pass four times over the 44 next hours.

21. On February 9, 2003, at 8:12 a.m. inmates in Pod 2C noticed that Quatroy was having a seizure, and helped him sit down at a table. The inmates notified Dep. Spencer who in turn notified Dep. Anderson at Central Control and Lt. Michael Borne. At 8:15 a.m. Dep. Spencer noted that Quatroy appeared to be having a seizure. Inmates helped Quatroy to the floor and held him down. Lt. Borne arrived, entered pod 2C and notified Medical that an inmate was having a seizure. At 8:16 a.m. M.A. Magee arrived. She awakened Quatroy by placing ammonia under his nose, and then proceeded to take his blood pressure and pulse. Quatroy required the assistance of M.A. Magee, Sgt. Savage, and Deputy Bernich to walk to his cell, during which time his hand was smashed in a gate and subsequently treated by M.A. Magee. Quatroy was not moved to medical observation at this time.

22. At 10:35 a.m. February 9th, roughly two hours after Quatroy's seizure, Deputy Wallace notified M.A. Magee, in Medical, that Quatroy was vomiting blood. An hour later Deputy

Bernich took Quatroy to Charity Hospital in New Orleans, Louisiana (CHNO), where they arrived at 12:07 p.m..

23. Quatroy told Nurse Chairs that he needed Methadone. Nurse Chairs referred him to CHNO because he said he had a withdrawal seizure. At CHNO he was given a physical exam, and again complained of having a seizure, and he informed the staff at CHNOl that he used Methadone and Xanax. After being examined at CHNO he was declared stable and released back to prison. CHNO prescribed Efinagan 25 mg, for three days, which is a drug given at the JPCC for nausea.

24. Thus on February 9, 2003 the only medications and or treatments that Quatroy was receiving for withdrawal, a condition requiring medical observation, were Efinagan 25mg, (for nausea), and Zantac (for acid reflux). Quatroy was placed on a liquid diet for 48 hours (he could not keep food down), and was then to progress to soft diet for the next 48 hours, followed by a regular diet.

25. Quatroy was put in "2-A Left 8" for suicide watch after returning from CHNO. Although Quatroy, suffering from a serious medical condition that required medical observation, was supposed to be placed under medical observation, he was actually placed outside of the medical observation area in an observation suicide cell.

26. On February 10, 2003, at 7:45 a.m. Central Control notified M.A. Tammy Williams that Medical was needed; that Quatroy was bleeding after he fell and hit his head. He had also defecated on himself. Nurses Chess and Chairs checked Quatroy, and he was given a shower by Sgt. Pierre, Deputy Dardano and Deputy Rossell. Approximately 15 minutes later, M.A. Williams was notified by Lt. Borne that Quatroy was again throwing up blood. M.A. Simone Hinton checked Quatroy but was unable to provide any medical treatment. Three hours later, at

11:00 or 11:30, Quatroy was taken to Medical. After spending 2 hours in Medical, Quatroy was again moved to a suicide watch, per Nurse Chairs. Central Control was not notified.

27. At 1:48 p.m., that same day, 13 minutes after Quatroy left Medical, he had another seizure; Central Control Dep. Bergeron and M.A. Curly were notified. Two minutes later Dep. Phelps notified Central Control and M.A. Curly that Quatroy was having another seizure. However, Nurse Chairs notified Central Control that Quatroy was off of medical observation.

28. On February 10th Dr. Williams examined Quatroy because "they told me that he was ah throwing up." Dr. Williams proscribed no additional treatment.

29. After seeing Dr. Williams on February 10, 2003 at 1:55 p.m.. Quatroy was seen by Med Pass 3 times over the next 30 hours (approximately). During this time Quatroy's behavior and condition deteriorated. On Wednesday, February 12th Quatroy did not eat any of his food. At 8:24 a.m. inmates complained of the odor coming from Quatroy's cell. They complained he was passing bile on himself and in his cell. Central Control was notified. At 8:50 a.m. Quatroy was showered by Lt. Borne, Sgt Smith, Sgt. Morvant, Sgt. Albarado, Deputy Fultz, and Deputy Grant because he needed to be carried to the shower. Lt. Borne requested Medical, and Nurses Chairs and Chess came with Dr. Richoux. No treatment was proscribed. For the remainder of the 12th Quatroy was always seen sitting on his bed.

30. On the morning of February 13, 2003 Quatroy was found with no clothes on. He was showered by Sgt. Pierre and Sgt. Morvant, and his cell was cleaned. At about midnight Quatroy was seen undressed and bent over the sink; Central Control was notified of his behavior, but did nothing.

31. On February 14, 2003 Quatroy was seen sitting on the toilet beginning at roughly 12:00a.m. He did not respond to roll call. Dep. Haines reported at 6:43 a.m. that he had not

moved since 12:00 a.m. Quatroy remained in this position, and was reported as still sitting on the toilet at 9:35 p.m.. He did not eat any food all day. He was seen by Med Pass twice during the day, but no action was taken.

32. On February 15, 2003, Quatroy did not eat any breakfast or lunch. He was found lying on the floor of his cell at 9:05 in the morning by Sgt. Mumphry. Approximately a half an hour later Sgt. Mumphry was notified that per Nurse Chairs, Quatroy was on a suicide watch, not medical observation. In response, Sgt. Mumphry took Quatroy's blanket, clothes, and towel out of his cell, checked his neck and body, and removed all food trays from Quatroy's cell, but took no other action.

33. On February 16, 2003, Dep. Spencer saw Quatroy on the floor. Quatroy did not eat breakfast. Dep. Spencer notified Central Control that Quatroy had not eaten in 4 days, but no other action was taken. At approximately 7:35 a.m. Lt. Borne and Sgt. Pierre checked on Quatroy.

34. On February 16, 2003, at 7:50 a.m., with the help of 2 or 3 inmates they carried Quatroy to the shower. At 8:00 a.m. Lt. Borne notified Dep. Spencer, who in turn notified Central Control, that Quatroy was having a seizure.

35. At 8:04 a.m., M.A. Hinton arrived. Lt. Borne had 3 inmates place Quatroy in a wheelchair and brought him to 2D/Medical, where he was given a bath and M.A. Hinton took his blood pressure. Sgt Pierre and Dep. Maranto took Quatroy to 2D/Medical to be monitored due to low body temperature.

36. At this time Quatroy had another seizure. Quatroy was unable to get out of the bathtub by himself, he was groggy and was mumbling incoherently.

37. At 9:00 a.m. on February the 16th, Quatroy was taken out of the tub by Dep. Maranto and

Sgt. Pierre, and taken to holding tank #4. The Dep. and Sgt. laid him on his right side and covered him with a blanket.

38. At 10:57 a.m. Quatroy was found dead.

39. The paramedics left the 2nd floor with Quatroy at 11:27 a.m. for West Jefferson Hospital. He arrived at 11:40 a.m. and at 11:47 a.m. he was pronounced dead by Dr. M. Volner.

COUNT I

**42 U.S.C. § 1983 Against Individual Defendants**

40. Paragraphs 1-39 are incorporated herein by reference, as though fully set forth herein.

41. Plaintiffs Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy claim damages for the injuries set forth above under 42 U.S.C. §1983 against Defendants Harry Lee, the Jefferson Parish Correctional Center (JPCC), Medical Assistant Simone R. Hinton, Medical Assistant Latonya Curly, JPCC Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, and Deputies A & B for violation of his constitutional rights and privileges under color of law.

42. The individual defendants', acting in their official capacity, acted with deliberate indifference to Mr. Quatroy's Eighth Amendment rights. The individual defendants' actions and omissions contributed to and or caused the government's complete failure to fulfill its obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. The individual defendants, at different and numerous points, observed but consistently and repeatedly failed to treat Quatroy's medical needs, including but not limited to a policy of nontreatment for seizures, nontreatment for Quatroy's inability to eat, nontreatment for low body temperature, and the removal of Quatroy from medical observation.

43. Deliberate indifference requires that the individual defendants both knew of and disregarded an excessive risk to Quatroy's health or safety. The actions and omissions of the individual defendants, described herein including but not limited to the officers' filing of 'white papers' on Quatroy's condition, an officer's exclamation that Quatroy needed to go to the hospital, officers' recognition of Quatroy's, failure to eat, and the continuous notification to Central Control of his condition, clearly evince that the individual defendants, including the JPCC were aware of facts from which an inference of an excessive risk to the Quatroy's health or safety could be drawn, and that they actually drew an inference that such potential for harm existed. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk.

44. The individual defendant's actions demonstrate systematic deliberate indifference to Quatroy's serious medical needs and constitute the unnecessary and wanton infliction of pain, prohibited by the Eighth Amendment.

45. As a result of the defendants' deliberate indifference, Vincent Quatroy is dead, giving rise to plaintiffs', Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy, 1983 action, on behalf of wrongful death beneficiaries and a survival action, as personal representatives of the Decedent's estate.

COUNT II

**42 U.S.C. § 1983 Against Individual Defendant Sheriff Harry Lee**

46. Paragraphs 1-39 are incorporated herein by reference, as though fully set forth herein.

47. Prior to February 16, 2003, Sheriff Harry Lee developed and maintained policies, customs and practices exhibiting deliberate indifference to the constitutional rights of persons within the Jefferson Parish Correctional Center, (JPCC) which caused the violation of the

deceased Vincent Quatroy's rights.

48. It was and is the policy, custom and practice of the Jefferson Parish Sheriff's Office, and Sheriff Harry Lee to bring arrested and convicted persons to the JPCC for holding.

49. It was the policy, custom and practice of the JPCC to review the medical history of all incoming inmates, including but not limited to current medications and treatments. However, the JPCC, with the knowledge of Sheriff Harry Lee, improperly instructs staff, both medical and non-medical, how to properly handle, administer, and house inmates with certain medical histories.

50. It is the policy, custom and practice of the JPCC, with the knowledge of Sheriff Harry Lee, not to provide inmates with methadone. This policy is conducted irrespective of an inmate's individual medical and drug history and background. A disagreement over medical treatment is not actionable under §1983, but a complete failure to treat an inmate is.

51. The policy, custom and practice of the JPCC, with the knowledge of Sheriff Harry Lee, is to *observe* inmates who are detoxifying, even off of a legally prescribed drug, but not to *treat* them. Such acts include, but are not limited to, allowing an inmate to go for 4 days without eating anything, to have repeated seizures, and to have a dangerously low body temperature, all without any meaningful medical treatment or intervention being performed.

52. Even the policy, custom, and practice, of "observation" over these inmates is subjectively inadequate as inmates under observation may be discovered bleeding from the head, lying on the floor for hours, and even not breathing. "Observation" seems to amount to little more than one official passing on of information about the visible status of an inmate to another official.

53. As a result of the above described policies, customs, and practices, employees of the JPCC, including defendants Medical Assistant Simone R. Hinton, Medical Assistant Latonya

Curly, Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, and Deputies A & B, were left with little or no direction as to how to care for an inmate experiencing deadly withdrawal.

54. The described policies, customs, and practices demonstrate a deliberate indifference on the part of Sheriff Harry Lee and the JPCC to the constitutional rights of persons arrested in the Parish of Jefferson and remanded to the JPCC, were the cause of the violations to Vincent Quatroy's rights alleged herein, and gave rise to plaintiffs', Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy, action on behalf of wrongful death beneficiaries and a survival action, as personal representatives of the Decedent's estate.

COUNT III

**Liability under Civil Code Article 2315 against Individual Defendants.**

55. Paragraphs 1-39 are incorporated herein by reference, as though fully set forth herein.

56. As a direct and proximate result of the injuries inflicted upon their son and father by the deliberate indifferent, or negligence, of defendants Sheriff Harry Lee, the Jefferson Parish Correctional Center (JPCC), Medical Assistant Simone R. Hinton, Medical Assistant Latonya Curly, JPCC Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, and Deputies A & B as described above plaintiffs suffered mental and emotional anguish and the loss of his society. Defendant Sheriff Harry Lee is also liable unto plaintiffs Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy under the doctrine of *respondeat superior*.

COUNT IV

**42 U.S.C. § 1983 Against Jefferson Parish Council**

57. The Jefferson Parish Council is responsible for the medical care of prisoners in the JPCC. LSA-R.S. 15:702. The Council did not provide adequate medical equipment, accommodations, or monitoring of Quatroy, and was aware of the deficient facilities for treatment of inmates suffering from withdrawal.

58. The described policies, customs, and practices demonstrate knowledge on the part of the Council were the cause of the violations to Vincent Quatroy's rights alleged herein, and gave rise to plaintiffs', Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy, action on behalf of wrongful death beneficiaries and a survival action, as personal representatives of the Decedent's estate.

**Trial by Jury**

59. Plaintiffs Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy hereby demand trial by jury.

**Conclusion**

WHEREFORE, AFTER DUE PROCEEDINGS HAD, the plaintiffs Mr. Rodney Quatroy, Mrs. Betty Quatroy, and Mr. Vincent Angello Quatroy respectfully request the Court to:

a. Award compensatory damages to the plaintiffs against the defendants, jointly and severally;

b. Award reasonable attorneys' fees and costs to the plaintiffs on counts I, II and IV of the complaint pursuant to 42 U.S.C. § 1988;

c. Award such other and further relief as this Court may deem appropriate.

Respectfully submitted this 17th day of February, 2004.

MICHAEL S. FAWER,
301 North Columbia Street
Covington, Louisiana 70433
(985) 871-7200
Louisiana Bar No. 5485

HERBERT V. LARSON, Jr.
700 Camp Street
New Orleans, Louisiana 70130
(504) 528-9500
Louisiana Bar No. 8052

Attorneys for
Rodney Quatroy
Betty Quatroy
Vincent Angello Quatroy