**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BETTY QUATROY AND** | * | |
| **VINCENT ANGELLO QUATROY** | * | |
| Plaintiffs | * | |
| | * | |
| **versus** | * | **CIVIL ACTION NO. 04-0451** |
| | * | **SECTION "E"** |
| **THE JEFFERSON PARISH** | * | **MAGISTRATE NO. 4** |
| **SHERIFF'S OFFICE, et al.** | * | |
| | * | |
| **Consolidated with** | * | **consolidated with** |
| | * | |
| **RODNEY QUATROY, et al.** | * | |
| | * | **CIVIL ACTION NO. 04-1425** |
| **versus** | * | **SECTION "E"** |
| | * | **MAGISTRATE NO. 4** |
| **NEWELL NORMAND, SHERIFF, et al.** | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

COME NOW Betty Quatroy, in her own behalf, and as the executrix and sole heir for

Rodney Quatroy, and Vincent Angelo Quatroy, plaintiffs in the above entitled and numbered

proceedings, who, through undersigned counsel, Michael S. Fawer, and Herbert V. Larson, Jr.,

pursuant to Rule 15 of the Federal Rules of Criminal Procedure, hereby amend and supplement

their First Amended Complaint in this proceeding to read as follows:

**Introduction**

1.       This is both an action on behalf of wrongful death beneficiaries, and a survival

action, brought pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United

States Constitution, and under the laws of the state of Louisiana, against Newell

1

Normand, the Sheriff of the Parish of Jefferson, in his capacity as legal successor to former Sheriff Harry Lee, and against the following corporations and persons in their individual capacities, who at all times germane to this complaint were employees of and/or acting under the direction of former Sheriff Harry Lee:  Jefferson Parish Correctional Center L.L.C. (JPCC), Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell and Deputies 1 & 2 who are known but not yet identified.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and upon the pendant jurisdiction of this Court to entertain claims arising under state law.

2.        It is alleged that the individual employees and the JPCC acted with *deliberate indifference* to prisoner Vincent Quatroy's serious illnesses and or injuries, violating his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment and the wanton infliction of pain, and that these defendants failed to provide Vincent Quatroy with the medical attention necessary to save his life.  It is further alleged that each of the acts alleged in this complaint occurred under color and pretense of the statutes, ordinances and usages of the State of Louisiana, the Parish of Jefferson, and the municipality of Gretna, Louisiana, and under the authority of defendants' position as employees of Harry Lee, the former Sheriff of Jefferson parish, and/or the JCCMP.

**Parties**

3.        When suit was originally filed in this matter, plaintiff Rodney Quatroy was a person of the age of majority, a citizen of the United States, and was domiciled in the

2

Eastern District of Louisiana and was the father of Vincent Quatroy, deceased.  Plaintiff Rodney Quatroy is now deceased, but his claims for damages are now the property of either his wife, plaintiff Betty Quatroy, or his grandson, plaintiff Vincent Angelo Quatroy.

4.     Plaintiff Betty Quatroy is a person of the age of majority, a citizen of the United States, is domiciled in the Eastern District of Louisiana and is the mother of Vincent Quatroy, deceased.

5.     Plaintiff Vincent Angelo Quatroy is, and was at all times germane to this complaint, a person of the age of majority, a citizen of the United States, is domiciled in the Eastern District of Louisiana, and is the son of Vincent Quatroy, deceased.

6.     Defendant Newell Normand is the Sheriff of Jefferson Parish, State of Louisiana, and is the legal successor in interest to Sheriff Harry Lee.

7.     Defendant JPCC is located and does business in the Eastern District of Louisiana.

8.     Defendants Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, and Deputies 1 & 2 who are known but not yet identified, are all employed by the JPCC in the Eastern District of Louisiana.

9.     Defendant the Louisiana Patient's Compensation Fund is the property party defendant for the previous defendants who were qualified health care providers with whom a settlement was reached, these defendants being: the Jefferson Community Correctional Center Medical Program, LLC, J.T. Hamrick, M.D., Miriam Schultz, Joy Chairs, Felicia Chess, Gustavia Smith, Juanita Peyton, M.D., Gbadetole Williams, M.D., and Richard Richoux, M.D.

10. Defendant the Jefferson Parish Council is located in the Eastern District of Louisiana.

**Facts**

11. On February 4, 2003, Vincent Quatroy was remanded to the JPCC in good physical condition.

12. Between roughly 5:30 p.m. on February 4, 2003 and 11:55 a.m. on February 16, 2003, the time at which Vincent Quatroy died, JPCC Central Control was kept apprised of all or most of the defendant officers' and medical assistants' observations, though not including all of Quatroy's episodes/ incidents/ and or events, relating to Quatroy's medical condition and general state of well-being.  The defendant officers' and medical assistants' observations include, but are not limited to, observing Quatroy: having 5 separate seizures, refusing meals, defecating on himself and his cell, vomiting blood and sleeping and remaining on the floor of his cell for extended periods of time.  At all relevant times, the JPCC was aware of Quatroy's deteriorating condition.

13. Vincent Quatroy died in less than twelve (12) full days of JPCC custody.

14. He was booked at the Jefferson Parish Correctional Center and the intake form was completed in late afternoon on February 4, 2003.  The JPCC Intake Booking Division Health and Screening Form listed the following visual observations of Quatroy: he did not appear under the influence of drugs or alcohol, he did not have any needle marks, there were no visible signs of withdrawal, he did not appear despondent or depressed, and he was carrying medications.

15. At the time he was first incarcerated, Quatroy was almost 50 years old and weighed over 200 pounds.  The health intake form reflects that Quatroy informed the

JPCC he was currently taking legal medications, specifically Methadone and Xanax.

16.   Vincent Quatroy had been, up until his incarceration, a patient at the New Orleans Narcotic Treatment Clinic (NONTC), located at 7606 West Bank Expressway, Marrero, Louisiana 70072. NONTC is a federally accredited clinic.  He received and ingested Methadone, as treatment for pain, in front of staff on a daily basis, except Sundays, for approximately 15 years.  He was also a patient of Dr. Ragenstein, a liver specialist at Tulane Medical Center.  In total, Quatroy was on 10 different medications, including but not limited to fluid pills for his liver, Xanax and Paxil for his nerves, and methadone for severe chronic pain.  Quatroy had ruptured disks in his back, and had metal rods placed in one leg and in his foot and walked with a cane.

17.   Bridgett Edmonds, who lived with Quatroy for approximately 10 years, brought the 10 bottles of medication to the JPCC, where they remained.  Ms. Edmonds spoke with Warden Jambon and medical staff, in a three-way phone conversation, regarding Quatroy's various medical conditions and medications and was told he would be moved to medical.

18.   On February 5, 2003, at 10:45 p.m. (over 24 hours after his booking process began) Quatroy complained of heart trouble.  Nurse Gustavia Smith checked him and gave him liquid antacid.

19.   On the morning of February 6, 2003, at 7:40 a.m. Quatroy was feeling worse and requested to be seen by Medical. Deputy August was notified of this request and he relayed it to Central Control.  Instead, at 10:00 a.m. Quatroy was seen by M.A. Tamyra Dyer during Med Pass.  A little over six hours later Quatroy requested the medication that he was expecting to receive.  Quatroy refused his food that day and at roughly 10:00

p.m., over 48 hours after his booking process began, Daniels informed Central Control that Quatroy was throwing up and felt sick.

20.	Quatroy was taken to Medical for the first time on February 7, 2003, at roughly 10:00 a.m.. A medical screening of Quatroy was performed. Quatroy informed examiners of his use of Methadone, his use of Xanax, that he had Hepatitis C, stomach problems, and that he had a hernia operation in 1973. Dr. Gbadetole Williams, a doctor at the JPCC who generally worked Monday through Friday from 9-5, also saw Quatroy. Dr. Williams filled out a form during his examination of Quatroy; both Dr. Williams and Quatroy signed it. This form included: Dr. Williams' observation of needle track marks on Quatroy's arms and extremities, and Quatroy's statement that he took Methadone and Xanax, that he was allergic to Demerol, and that he had Hepatitis C.

21.	Dr. Williams found that the only abnormality in Quatroy's physical condition present during his February 7, 2003 medical examination, were what he believed to be the "illegal track marks on his two arms." Dr. Williams assumed that these marks were due to past intravenous drug abuse.

22.	Quatroy saw medical assistants during Med Pass four times over the 44 next hours.

23.	On February 9, 2003, at 8:12 a.m. inmates in Pod 2C noticed that Quatroy was having a seizure, and helped him sit down at a table. The inmates notified Dep. Spencer who in turn notified Dep. Anderson at Central Control and Lt. Michael Borne. At 8:15 a.m. Dep. Spencer noted that Quatroy appeared to be having a seizure. Inmates helped Quatroy to the floor and held him down. Lt. Borne arrived, entered pod 2C and notified Medical that an inmate was having a seizure. At 8:16 a.m. M.A. Magee arrived. She

awakened Quatroy by placing ammonia under his nose, and then proceeded to take his blood pressure and pulse. Quatroy required the assistance of M.A. Magee, Sgt. Savage, and Deputy Bernich to walk to his cell, during which time his hand was smashed in a gate and subsequently treated by M.A. Magee.  Quatroy was not moved to medical observation at this time.

24.    At 10:35 a.m. February 9th, roughly two hours after Quatroy's seizure, Deputy Wallace notified M.A. Magee, in Medical, that Quatroy was vomiting blood.  An hour later Deputy Bernich took Quatroy to Charity Hospital in New Orleans, Louisiana (CHNO), where they arrived at 12:07 p.m..

25.    Quatroy told Nurse Chairs that he needed Methadone.  Nurse Chairs referred him to CHNO because he said he had a withdrawal seizure.  At CHNO he was given a physical exam, and again complained of having a seizure, and he informed the staff at CHNOl that he used Methadone and Xanax.  After being examined at CHNO he was declared stable and released back to prison.  CHNO prescribed Efinagan 25 mg, for three days, which is a drug given at the JPCC for nausea.

26.    Thus on February 9, 2003 the only medications and or treatments that Quatroy was receiving for withdrawal, a condition requiring medical observation, were Efinagan 25mg, (for nausea), and Zantac (for acid reflux).  Quatroy was placed on a liquid diet for 48 hours (he could not keep food down), and was then to progress to soft diet for the next 48 hours, followed by a regular diet.

27.    Quatroy was put in "2-A Left 8" for suicide watch after returning from CHNO. Although Quatroy, suffering from a serious medical condition that required medical observation, was supposed to be placed under medical observation, he was actually

placed outside of the medical observation area in an observation suicide cell.

28.     On February 10, 2003, at 7:45 a.m. Central Control notified M.A. Tammy Williams that Medical was needed; that Quatroy was bleeding after he fell and hit his head.  He had also defecated on himself.  Nurses Chess and Chairs checked Quatroy, and he was given a shower by Sgt. Pierre, Deputy Dardano and Deputy Rossell. Approximately 15 minutes later, M.A. Williams was notified by Lt. Borne that Quatroy was again throwing up blood.  M.A. Simone Hinton checked Quatroy but was unable to provide any medical treatment.  Three hours later, at 11:00 or 11:30, Quatroy was taken to Medical.  After spending 2 hours in Medical, Quatroy was again moved to a suicide watch, per Nurse Chairs.  Central Control was not notified.

29.     At 1:48 p.m., that same day, 13 minutes after Quatroy left Medical, he had another seizure; Central Control Dep. Bergeron and M.A. Curly were notified.  Two minutes later Dep. Phelps notified Central Control and M.A. Curly that Quatroy was having another seizure.  However, Nurse Chairs notified Central Control that Quatroy was off of medical observation.

30.     On February 10th Dr. Williams examined Quatroy because "they told me that he was ah throwing up."  Dr. Williams proscribed no additional treatment.

31.     After seeing Dr. Williams on February 10, 2003 at 1:55 p.m., Quatroy was seen by Med Pass 3 times over the next 30 hours (approximately).  During this time Quatroy's behavior and condition deteriorated.  On Wednesday, February 12th Quatroy did not eat any of his food.  At 8:24 a.m. inmates complained of the odor coming from Quatroy's cell.  They complained he was passing bile on himself and in his cell.  Central Control was notified.  At 8:50 a.m. Quatroy was showered by Lt. Borne, Sgt Smith, Sgt. Morvant,

Sgt. Albarado, Deputy Fultz, and Deputy Grant, because he needed to be carried to the shower. Lt. Borne requested Medical, and Nurses Chairs and Chess came with Dr. Richoux. No treatment was proscribed. For the remainder of the 12th Quatroy was always seen sitting on his bed.

32.     On the morning of February 13, 2003 Quatroy was found with no clothes on. He was showered by Sgt. Pierre and Sgt. Morvant, and his cell was cleaned. At about midnight Quatroy was seen undressed and bent over the sink; Central Control was notified of his behavior, but did nothing.

33.     On February 14, 2003 Quatroy was seen sitting on the toilet beginning at roughly 12:00a.m. He did not respond to roll call. Dep. Haines reported at 6:43 a.m. that he had not moved since 12:00 a.m. Quatroy remained in this position, and was reported as still sitting on the toilet at 9:35 p.m. He did not eat any food all day. He was seen by Med Pass twice during the day, but no action was taken.

34.     On February 15, 2003, Quatroy did not eat any breakfast or lunch. He was found lying on the floor of his cell at 9:05 in the morning by Sgt. Mumphry. Approximately a half an hour later Sgt. Mumphry was notified that per Nurse Chairs, Quatroy was on a suicide watch, not medical observation. In response, Sgt. Mumphry took Quatroy's blanket, clothes, and towel out of his cell, checked his neck and body, and removed all food trays from Quatroy's cell, but took no other action.

35.     On February 16, 2003, Dep. Spencer saw Quatroy on the floor. Quatroy did not eat breakfast. Dep. Spencer notified Central Control that Quatroy had not eaten in 4 days, but no other action was taken. At approximately 7:35 a.m. Lt. Borne and Sgt. Pierre checked on Quatroy.

9

36. On February 16, 2003, at 7:50 a.m., with the help of 2 or 3 inmates they carried Quatroy to the shower. At 8:00 a.m. Lt. Borne notified Dep. Spencer, who in turn notified Central Control, that Quatroy was having a seizure.

37. At 8:04 a.m., M.A. Hinton arrived. Lt. Borne had 3 inmates place Quatroy in a wheelchair and brought him to 2D/Medical, where he was given a bath and M.A. Hinton took his blood pressure. Sgt Pierre and Dep. Maranto took Quatroy to 2D/Medical to be monitored due to low body temperature.

38. At this time Quatroy had another seizure. Quatroy was unable to get out of the bathtub by himself, and he was groggy and was mumbling incoherently.

39. At 9:00 a.m. on February the 16th, Quatroy was taken out of the tub by Dep. Maranto and Sgt. Pierre, and taken to holding tank #4. The Dep. and Sgt. laid him on his right side and covered him with a blanket.

40. At 10:57 a.m. Quatroy was found dead. The paramedics left the 2nd floor with Quatroy at 11:27 a.m. for West Jefferson Hospital. He arrived at 11:40 a.m. and at 11:47 a.m. he was pronounced dead by Dr. M. Volner.

## COUNT I

### 42 U.S.C. § 1983 Action Against Individual Defendants

41. Paragraphs 1-40 are incorporated herein by reference, as though fully set forth herein.

42. Plaintiffs Betty Quatroy, in her representative capacity, and in her individual capacity, and Vincent Angelo Quatroy claim damages for the injuries set forth above under 42 U.S.C. § 1983 against defendants Newell Normand, The Jefferson Parish Correctional Center (JPCC), the Louisiana Patient's Compensation Fund, Lieutenant

Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, Deputies 1 & 2, and the Jefferson Parish Council, for violation of Vincent Quatroy's constitutional rights and privileges under color of law.

43.      The individual defendants, acting in their official capacity, acted with deliberate indifference to Vincent Quatroy's Eighth Amendment rights.  The individual defendants' actions and omissions contributed to and or caused the government's complete failure to fulfill its obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  The individual defendants, at different and numerous points, observed but consistently and repeatedly failed to treat Quatroy's medical needs, including but not limited to a policy of nontreatment for seizures, nontreatment for Quatroy's inability to eat, nontreatment for low body temperature, and the removal of Quatroy from medical observation.

44.      Deliberate indifference requires that the individual defendants both knew of and disregarded an excessive risk to Quatroy's health or safety.  The actions and omissions of the individual defendants, described herein including but not limited to the officer's filing of "white papers" on Quatroy's condition, an officer's exclamation that quatroy needed to go to the hospital, officers' recognition of Quatroy's failure to eat, and the continuous notification to Central Control of his condition, clearly evince that the individual defendants, including the JPCC were aware of facts from which an inference of an excessive risk to Quatroy's health or safety could be drawn, and that they actually drew an inference that such potential for harm existed.  Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the

11

obviousness of a substantial risk.

45.     The individual defendants' actions demonstrate systematic deliberate indifference to Quatroy's serious medical needs and constitute the unnecessary and wanton infliction of pain, prohibited by the Eighth Amendment.

46.     As a result of the defendants' deliberate indifference, Vincent Quatroy is dead, giving rise to plaintiffs' Betty Quatroy, and Vincent Angelo Quatroy Section 1983 action, on behalf of wrongful death beneficiaries, and a survival action, as personal representatives of the decedent's estate.

## COUNT II

### 42 U.S.C. § 1983 Action Against Newell Normand

47.     Paragraphs 1-40 are incorporated herein by reference, as though fully set forth herein.

48.     Prior to February 16, 2003, former Sheriff Harry Lee developed and maintained policies, customs and practices exhibiting deliberate indifference to the constitutional rights of persons within the Jefferson Parish Correctional Center, (JPCC) which caused the violation of the deceased Vincent Quatroy's rights.

49.     It was the policy, custom and practice of the Jefferson Parish Sheriff's Office, and Sheriff Harry Lee to bring arrested and convicted persons to the JPCC for holding.

50.     It was the policy, custom and practice of the JPCC to review the medical history of all incoming inmates, including but not limited to current medications and treatments. However, the JPCC, with the knowledge of Sheriff Harry Lee, improperly instructed staff, both medical and non-medical, how to properly handle, administer, and house inmates with certain medical histories.

51.     It was the policy, custom and practice of the JPCC, with the knowledge of Sheriff Harry Lee, not to provide inmates with Methadone.  This policy is conducted irrespective of an inmate's individual medical and drug history and background.  A disagreement over medical treatment is not actionable under 42 U.S.C. Section 1983, but a complete failure to treat an inmate is.

52.     The policy, custom and practice of the JPCC, with the knowledge of Sheriff Harry Lee, was to *observe* inmates who are detoxifying, even off of a legally prescribed drug, but not to *treat* them.  Such acts include, but are not limited to, allowing an inmated to go for 4 days without eating anything, to have repeated seizures, and to have a dangerously low body temperature, all without any meaningful medical treatment or intervention.

53.     Even the policy, custom, and practice of "observation" of these inmates is subjectively inadequate, as inmates under observation may be discovered bleeding from the head, lying on the floor for hours, and even not breathing.  "Observation" seems to amount to little more than one official passing on information about the visible status of an inmate to another official.

54.     As a result of the above described policies, customs, and practices, employees of the JPCC, including defendants Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction officer Edward J. Maranto, Deputy Eartha Powell, and Deputies 1 & 2, were left with little or no direction as to how to care for an inmate experiencing deadly withdrawal.

55.     The described policies, customs and practices demonstrate a deliberate indifference on the part of Sheriff Harry Lee and the JPCC to the constitutional rights of persons arrested in the Parish of Jefferson and remanded to the JPCC, and were the direct

and proximate cause of the violations of Vincent Quatroy's constitutional rights, and give rise to the plaintiffs' action as the wrongful death beneficiaries, and as survivors, and on behalf of the decedent's estate, and on their own behalf.

<div align="center">COUNT III</div>

**<div align="center">Liability Under Civil Code Article 2315 Against Individual Defendants</div>**

56.	Paragraphs 1-40 are incorporated herein by reference, as though fully set forth herein.

57.	As a direct and proximate result of the injuries inflicted upon her son and his father, by the deliberate indifference of defendant Sheriff  Newell Normand, as successor to Sheriff Harry Lee, The Jefferson Parish Correctional Center (JPCC), the Louisiana Patient's Compensation Fund, Lieutenant Michael Borne, Correction Officer Rhoda Anderson, Correction Officer Edward J. Maranto, Deputy Eartha Powell, Deputies 1 & 2, and the Jefferson Parish Council, as described above, plaintiffs suffered mental and emotional anguish and the loss of Vincent Quatroy's society.  Defendant Newell Normand is also liable unto plaintiffs under the doctrine of *respondeat superior*.

<div align="center">COUNT IV</div>

**<div align="center">42  U.S.C. § 1983 Action Against Jefferson Parish Council</div>**

58.	Paragraphs 1-40 are incorporated herein by reference, as though fully set forth herein.

59.	The Jefferson Parish Council is responsible for the medical care of prisoners in the JPCC.  See LSA-R.S. 15;702.  The Council did not provide adequate medical equipment, accommodations, or monitoring of Quatroy, and was aware of the deficient facilities for treatment of inmates suffering from withdrawal.

<div align="center">14</div>

60.     The described policies, customs and practices demonstrate a deliberate indifference on the part of the Jefferson Parish Council, to the constitutional rights of persons arrested in the Parish of Jefferson and remanded to the JPCC, and were the direct and proximate cause of the violations of Vincent Quatroy's constitutional rights, and give rise to the plaintiffs' action as the wrongful death beneficiaries, and as survivors, and on behalf of the decedent's estate, and on their own behalf.

<div align="center">COUNT V</div>

<div align="center">**Liability under Civil Code Article 2315 and LSA-R.S. 15:1171**
**Against the Louisiana Patient's Compensation Fund and Individual Defendants**</div>

61.     Paragraphs 1-40 are incorporated herein by reference, as though fully set forth herein.

62.     As a direct and proximate result of the injuries inflicted upon her son, and his father by the deliberated indifference, or negligence, of former defendants Jefferson Community Correction Center Medical Program, and its employees, former defendants Dr. Gbadetole Williams, Dr. Richard Richoux, Nurse Joy Chairs, Nurse Felicia Chess, Nurse Gustavia Smith, Dr. J.T. Hamrick, Dr. Juanita Peyton, and Mimi Schultz, as described above, plaintiffs suffered mental and emotional anguish and the loss of Vincent Quatroy's society.

63.     Defendant the Louisiana Patient's Compensation Fund is liable unto plaintiffs for all acts of medical malpractice by former defendants Jefferson Community Correction Center Medical Program, and its employees, former defendants Dr. Gbadetole Williams, Dr. Richard Richoux, Nurse Joy Chairs, Nurse Felicia Chess, Nurse Gustavia Smith, Dr. J.T. Hamrick, Dr. Juanita Peyton, and Mimi Schultz, as their treatment failed to meet the

requisite standard of care, and was the proximate cause of Vincent Quatroy's death.

**Trial by Jury**

64.    Plaintiffs Betty Quatroy and Vincent Angelo Quatroy hereby demand trial by jury.

**Conclusion**

WHEREFORE, AFTER DUE PROCEEDINGS HAD, the plaintiffs Betty Quatroy and Vincent Angelo Quatroy respectfully request the Court to:

A.  Award compensatory damages to the plaintiffs against the defendants, jointly and severally;

B.  Award reasonable attorneys' fees and costs to the plaintiffs on Counts I, II and Iv of the complaint, pursuant to 42 U.S.C. § 1988;

C.  Award such other relief as this Court may deem appropriate.

Respectfully submitted, this 29th day of May, 2008.

/s/ Michael S. Fawer
MICHAEL S. FAWER,
301 North Columbia Street
Covington, Louisiana 70433
(985) 871-7200
Louisiana Bar No. 5485

/s/ Herbert V. Larson, Jr.
HERBERT V. LARSON, Jr.
650 Poydras Street,
Suite 2105
New Orleans, Louisiana 70130
(504) 680-6061
Louisiana Bar No. 8052

Attorneys for
Betty Quatroy
Vincent Angelo Quatroy