UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BETTY QUATROY, ET AL. | CIVIL ACTION |
| VERSUS | NO: 04-451<br>c/w 04-1425 |
| THE JEFFERSON PARISH<br>SHERIFF'S OFFICE, ET AL. | SECTION: R(4) |

**ORDER AND REASONS**

Before the Court is the Louisiana Patient's Compensation Fund's motion for partial summary judgment. For the following reasons, the Court GRANTS the motion.

**I.  Background**

This action arises out of the death of 49-year old Vincent Quatroy while incarcerated at the Jefferson Parish Correctional Center (JPCC). Before his imprisonment, Quatroy had been a patient at the New Orleans Narcotic Center for about 15 years and was taking a number of medications, including Methadone and Xanax. On February 4, 2003, Quatroy was remanded to the JPCC in

good physical condition. He completed his intake forms in the late afternoon, and on the forms he listed the medications he was taking. Quatroy was on 10 different medications in total, including fluid pills for his liver, Xanax and Paxil for his anxiety, and Methadone for severe chronic pain. Brigett Edmonds, who lived with Quatroy, brought his medications to the JPCC and spoke with the warden and medical staff about Quatroy's medical conditions.

Plaintiffs allege that the events leading to Quatroy's death occurred as follows. (R. Doc. 24). Plaintiffs assert that Quatroy's medical problems began over 24 hours after he was remanded to JPCC, on February 5, 2003 at 10:45 p.m. At that time, he complained of heart trouble and was given a liquid antacid by Nurse Gustavia Smith. The next morning, at 7:40 a.m., Quatroy requested a doctor. Instead, he was seen by medical assistant Tamyra Dyer during Med Pass at 10 a.m. and received medication about six hours later. Quatroy began vomiting that night. The next morning, on February 7, 2003, Quatroy was taken to Medical. Dr. Gbadetole Williams examined Quatroy, who told the doctor of his Methadone use. Quatroy was returned to his cell. He saw medical assistants during Med Pass four times over the next 44 hours.

On February 9, 2003, at around 8:15 a.m., Quatroy suffered a

seizure. Despite the seizure, Quatroy was not moved to medical observation, but was helped back to his cell by a medical assistant. Quatroy began vomiting blood about two hours later and was taken to Charity Hospital. He informed the staff there of his Methadone use. The staff declared him stable and released him back to prison with a prescription for Efinagan, a drug that controls nausea. Quatroy was put on a liquid diet for 48 hours since he could not keep food down. Back at the correctional center, he was placed in the suicide watch observation cell.

On February 10, 2003, at 7:45 a.m., Quatroy was found bleeding after he fell and hit his head. He had also defecated on himself. The officers gave Quatroy a shower, and shortly thereafter he began throwing up blood. Quatroy was taken to Medical three hours later and after spending a couple of hours there, was moved back to suicide watch. Quatroy was examined by Dr. Williams that night after he suffered another seizure, but Dr. Williams did not order additional treatment.

Quatroy's behavior and condition continued to deteriorate over the next few days. He refused to eat and had to be showered by the jail staff multiple times. He spent the entire day of February 14, 2003 sitting on the toilet. On February 16, 2003, at around 8 a.m., Quatroy had a seizure. He was taken to Medical, where he had another seizure. Quatroy was given a bath,

but was unable to get out of the tub by himself.  After he was taken out of the tub at 9 a.m., he was placed in a holding tank, where he was laid on his right side and covered with a blanket.  Quatroy was found dead at 10:57 a.m. on February 16, 2003, after less than 12 full days in the JPCC.

On February 17, 2004, Quatroy's parents, Rodney[1] and Betty Quatroy, and his then 28-year-old son, Vincent Angelo Quatroy, sued the Jefferson Parish Sheriff's Office, Sheriff Harry Lee, the JPCC, the Jefferson Parish Council, and various JPCC officers and employees.  The case was allotted to Judge Livaudais.  Plaintiffs brought a 42 U.S.C. § 1983 action alleging that defendants acted with deliberate indifference to Quatroy's medical needs in violation of the 8th Amendment of the Constitution.  Plaintiffs also sought damages under Louisiana Civil Code article 2315.  Plaintiffs amended their complaint to add as defendants a number of Quatroy's physicians and nurses, the Jefferson Community Correction Center Medical Program, LLC (JCCMP), and Charity Hospital.  Pursuant to the requirements of the Louisiana Medical Malpractice Act, La. Rev. Stat. Ann. § 40:1299.41, *et seq.,* the case was stayed pending the outcome of a Medical Review Panel.  On July 6, 2007, plaintiffs moved for

---

[1]Rodney Quatroy died during the pendency of this matter and was terminated as a plaintiff on July 1, 2008.

4

approval of a settlement reached with the JCCMP and the treating physicians and nurses. (R. Doc. 24). The insurer for those defendants had agreed to pay plaintiffs $100,000, the full value of the policy of liability insurance for those health care providers. The JCCMP and the treating physicians and nurses were subsequently dismissed from the case. (R. Doc. 32). Plaintiffs also moved to dismiss Charity Hospital without prejudice, and the Court granted the motion. (R. Doc. 35). Plaintiffs reserved their right to pursue their medical malpractice claims in excess of $100,000 against the Louisiana Patient's Compensation Fund (the "Fund") and added the Fund as a party in their Second Amended Complaint, filed on July 1, 2008. (R. Doc. 45). On August 26, 2008, Judge Livaudais dismissed plaintiffs' claims against the Fund under 42 U.S.C. § 1983 and the 8th Amendment, the claims of Betty Quatroy and the Estate of Rodney Quatroy for wrongful death and survival damages pursuant to Louisiana Civil Code articles 2315.1 and 2315.2, and the claims of all plaintiffs for damages under Louisiana Civil Code article 2315.[2] On January

---

[2] (R. Doc. 52). Judge Livaudais did not state reasons for granting the motion to dismiss. But plaintiffs' section 1983 and 8th Amendment claims against the Fund fail because the Fund compensates claimants only for damages suffered as a result of medical malpractice, not constitutional violations. The survival and wrongful death claims of Betty Quatroy and the Estate of Rodney Quatroy fail because parents of the deceased do not have standing to bring such claims when the deceased is survived by a

6, 2009, the case was transferred to this section. The only remaining claims against the Fund are Vincent Angelo Quatroy's claims for survivor and wrongful death damages under articles 2315.1 and 2315.2. The Fund now moves for summary judgment on those claims.

**II. Legal Standard**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

---

spouse or child. *See* La. Civ. Code arts. 2315.1 and 2315.2. Because Quatroy was survived by his child, Vincent Angelo Quatroy, his parents could not bring claims under Louisiana Civil Code articles 2315.1 and 2315.2.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *Lavespere,* 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

**III. Discussion**

The Louisiana Medical Malpractice Act, La. Rev. Stat. Ann. § 40:1299.41, *et seq.* (the LMMA), established a framework for compensating persons injured as a result of medical malpractice. *Miller v. Bossier*, 940 So.2d 54, 58 (La. Ct. App. 2006) (citing *Williams v. Enriquez*, 915 So.2d 434 (La. Ct. App. 2005)). The LMMA limits the amount recoverable for malpractice claims, exclusive of future medical care and related benefits, to $500,000, plus interest and costs. La. Rev. Stat. Ann. §

40:1299.42(B)(1). The LMMA limits the liability of health care providers to $100,000, plus interest. La. Rev. Stat. Ann. § 40:1299.41(B)(2); *Miller*, 940 So.2d at 58. Any damages awarded or agreed to in excess of $100,000 may be recovered from the Patient's Compensation Fund. La. Rev. Stat. Ann. § 40:1299.41(B)(3); *Miller*, 940 So.2d at 58. The LMMA created the Patient's Compensation Fund as a custodial fund of the state to hold monies in trust for the "use, benefit, and protection" of medical malpractice claimants and the Fund's private health care provider members. La. Rev. Stat. Ann. § 40:1299.44; *Louisiana Patients' Compensation Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 586 (5th Cir. 2005).

Payment by a medical provider or insurer of $100,000 in settlement establishes proof of liability for malpractice and for damages of at least $100,000. *See Graham v. Willis-Knighton Medical Center*, 699 So.2d 365, 372 (La. 1997). If plaintiff proceeds to trial against the Fund, plaintiff must prove that the admitted malpractice caused damages in excess of $100,000. *Id. See also Miller*, 940 So.2d at 58; *Gravley v. Giambelluca*, 758 So.2d 160, 161 (La. Ct. App. 1998). Because plaintiffs here settled with the insurer for $100,000, plaintiffs have established proof of liability for malpractice and proof that the

malpractice caused $100,000 in damages.

Here, the Fund moves for partial summary judgment on one element of damages. The Fund contends that plaintiffs' claims for lost Social Security benefits must be dismissed since Vincent Angelo Quatroy was not his father's dependent at the time of his father's death. Plaintiffs oppose the motion on two grounds. First, plaintiffs contend that the Fund does not have standing to bring its summary judgment motion. Second, plaintiffs argue that both Betty Quatroy and Vincent Angelo Quatroy are entitled to recover all damages resulting from the death of Vincent Quatroy, regardless of whether or not they relied on Quatroy for support.

**A.   Standing**

Plaintiffs' argument that the Fund does not have standing to bring its summary judgment motion is misplaced. Plaintiffs rely on a case from the Louisiana Court of Appeal for the Third Circuit holding that the Fund lacks standing to raise an exception of prescription once the liability of the health care provider is admitted to the fullest extent. *See Romero v. Elias*, 972 So.2d 450, 454 (La. Ct. App. 2007). Other Louisiana circuit courts have similarly held that the Fund lacks standing to raise exceptions related to liability once the health care providers have settled, or been found liable, for $100,000. *See McGrath v.*

*Excel Home Care, Inc.*, 810 So.2d 1283, 1299 (La. Ct. App. 2002); *Kelty v. Brumfield,* 534 So.2d 1331, 1333-34 (La. Ct. App. 1988). The cases emphasize that the Fund's interest in defending against plaintiffs relates solely to damages, not liability. *See Romero*, 972 So.2d at 453 (quoting *Felix v. St. Paul Fire and Marine Ins. Co.*, 477 So.2d 676 (La. 1985) ("the only issue confronting the fund once a maximum settlement has been reached with the health care provider is the amount of damages"); *Stuka v. Fleming*, 561 So.2d 1371, 1374 (La. 1990) ("The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages"); *Kelty v. Brumfield*, 633 So.2d 1210, 1216 (La. 1994) ("The [Fund] is in the nature of a statutory intervenor, not a true defendant, and may dispute the quantum of damages over $100,000 but not its own liability therefor").

Here, the Fund has not raised an issue related to liability. The Fund is disputing the amount of damages plaintiffs may recover, which it has a right to do. *See Kelty*, 633 So.2d at 1216. Although a payment of $100,000 in settlement establishes proof of liability for malpractice and damages up to $100,000,

10

plaintiff has the burden of proving that the malpractice caused damages in excess of $100,000. *See Graham*, 699 So.2d at 371. The Fund is entitled to dispute the amount of damages at trial, *see* La. Rev. Stat. Ann. § 40:1299.44(C)(5)(a), and is consequently entitled to dispute the amount of damages on summary judgment if no evidence can be adduced to support such damages. The Fund has standing to bring its claim.

**B. Recoverable damages**

Plaintiff Vincent Angelo Quatroy's[3] malpractice claim consists of both a wrongful death action under Louisiana Civil Code article 2315.2 and a survival action under Louisiana Civil Code article 2315.1. In a suit for wrongful death, the plaintiff may recover damages including loss of support and services, medical and funeral costs, and loss of love and affection. *In re Med. Review Panel Proceedings Reidling v. Smith*, 828 So.2d 656, 660 (La. Ct. App. 2002). The relative of the decedent may also receive damages for the mental pain, suffering, and distress he suffered as a result of his relative's death. *Bryant v. Solomon*, 712 So.2d 145, 147 (La. Ct. App. 1998). For a survival action,

---

[3] Although plaintiffs argue that the decedent's mother, plaintiff Betty Quatroy, may recover damages against the Fund, her claim for wrongful death and survival damages was previously dismissed by Judge Livaudais. (R. Doc. 52).

11

the elements of damages are "the deceased's pain and suffering, loss of earnings, fright, fear or mental anguish while the ordeal is in progress." *Subervielle v. State Farm Mut. Auto. Ins. Co.*, --- So.2d ---, 2009 WL 103968 at *3 (La. Ct. App. 2009).

The Fund contends that 33-year-old Vincent Angelo Quatroy cannot recover any damages for loss of support in his wrongful death claim since he cannot show that he depended on the Social Security Disability benefits received by his father.[4] The Fund cites a series of cases holding that a showing of prior actual support is requisite to recovery of damages for loss of support. *See Newsom v. State Dept. of Trans. and Dev.*, 640 So.2d 374, 381 (La. Ct. App. 1994) (loss of support damages may be awarded to major children when there is evidence of actual support); *Williams v. City of New Orleans*, 433 So.2d 1129, 1137 (La. Ct. App. 1983) ("To be compensated for loss of support a plaintiff must show actual prior monetary support"); *Humphries v. Louisiana Dept. of Public Works, Division of Trans.*, 545 So.2d 610, 620 (La. Ct. App. 1989) (allowing an award for loss of support when evidence showed that 18-year-old major was in high school and

---

[4]Neither party alleges that Vincent Angelo Quatroy can recover lost earnings up until the time of Quatroy's death through the survival action. Quatroy was not working, but receiving disability benefits. The payment of these would not have stopped due to his illness.

lived at home).  In response, plaintiff does not contend that he depended on the decedent for support and does not provide any evidence to suggest that he did.  He does not cite any cases allowing damages for loss of support without evidence of prior support.  Rather, he argues that although he was not dependent on Quatroy, he should be allowed to offer evidence "of the economic value of Vincent Quatroy's life, including lost income from Social Security disability."

Plaintiff has not shown that there are genuine issues of material fact as to his loss of support claim.  Plaintiff Vincent Angelo Quatroy has provided no evidence, and does not even allege, that he derived any support from his father's disability benefits.  Plaintiff supports himself.  He admitted in his interrogatories that he works and has been employed by four different employers over the past ten years. (R. Doc. 76, Exhibit C).  The purpose of damages for loss of support is to compensate a survivor for the loss of the decedent's support.  Without such support, plaintiff has suffered no compensable loss on this element of damages.  Because plaintiff has not presented any evidence of prior actual support, his claim for loss of support damages must be dismissed.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the Louisiana Patient Compensation Fund's motion for partial summary judgment.

New Orleans, Louisiana, this __7th__ day of April, 2009

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE